1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**(SEATTLE)**

8

*NextPlay Technologies, Inc.*,

Case No.  2:21-cv-1480

9

Plaintiff,

**VERIFIED COMPLAINT**

10

v.

JURY DEMAND

11

*Grant Kim, Stephen Willey, Yasuyo Yamazaki,*
*Yuki Hirakawa, and Axion Ventures, Inc.*,

12

13

Defendants.

14
15
16
17
18
19
20
21
22
23
24
25
26

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1    Plaintiff NextPlay Technologies, Inc. ("NextPlay" or "Plaintiff"), for its Complaint against

2    Axion Ventures, Inc. ("Axion"); certain individual members of the Axion Board of Directors,

3    Messrs. Grant Kim, Stephen Willey, and Yasuyo Yamazaki (the "Director Defendants"); and an

4    investor and co-conspirator friendly to the Director Defendants, Yuki Hirakawa (collectively,

5    "Defendants"), hereby alleges as follows:

6                                    **NATURE OF THE ACTION**

7    NextPlay is the purchaser of valuable intellectual property developed by its predecessors

8    in interest. Defendants have attempted to interfere and actually have interfered with NextPlay's

9    ability to exercise its acquired rights, and Defendants have disputed NextPlay's ownership

10   interests. By this action, NextPlay seeks to validate the copyright and other rights it acquired, and

11   to recover damages for Defendants' fraudulent efforts to disrupt NextPlay's ownership interests.

12   Central among the assets acquired by NextPlay is an innovative in-game advertising

13   technology ("IGA") that enables companies to seamlessly advertise their products and services

14   within video and mobile games. The IGA was invented and developed by entities controlled

15   directly or indirectly by non-party J. Todd Bonner and other shareholders of Red Anchor Trading

16   Corp. ("Red Anchor") to be integrated into Red Anchor's existing ecosystem. The Red Anchor

17   ecosystem includes HotNow, a mobile application where end-users earn HOT Tokens (a

18   cryptocurrency) that may be used to make purchases from the advertisements inserted into the

19   games by the HotPlay IGA. Together, the two separate components, HotNow and HotPlay, are

20   referred to herein as the "HotPlay Technology." Bonner and the Red Anchor Affiliates[1] involved

21   in development have invested more than $16 million developing the HotPlay Technology.

22   NextPlay presently owns and holds the copyright in the HotPlay IGA and seeks to vindicate its

23   rights in that copyright through this action.

24   The transaction by which NextPlay came to own the HotPlay IGA also transferred to

25   NextPlay the equity and debt interests held by certain Red Anchor Affiliates in the company for

26

---

[1] Further defined *infra* at note 2.

COMPLAINT - Case No. 2:21-cv-1480

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94304
+1.650.843.4000

1   which Bonner had been CEO—Defendant Axion.  Axion is an investment issuer active in video

2   game design through entities it controls or in which it has an interest.  Ultimately, the Director

3   Defendants ousted Bonner as Axion's CEO and instigated a contrived case or controversy about

4   NextPlay's ownership and exclusive rights in the HotPlay IGA copyright.  The Director

5   Defendants falsely asserted—and continue to assert—that Axion rather than NextPlay (or its

6   predecessors) owns the HotPlay IGA.  The Director Defendants also conspired among themselves

7   and with Defendant Hirakawa to fraudulently manipulate the April 2021 election of directors at

8   the Axion annual general meeting ("AGM") so that they could control Axion notwithstanding

9   NextPlay's substantial interest.

10         Some of the Director Defendants' most egregious frauds and manipulations of the election

11   at that AGM are the subject of litigation brought by other Axion shareholders and currently

12   pending elsewhere.  At issue here is Defendants' forgery designed to invalidate and reverse the

13   votes cast for which NextPlay is the beneficial owner.  Also at issue is Defendants' conspiracy to

14   engage in fraud for the purpose of invalidating and overriding the vote of Axion shares for which

15   NextPlay is the beneficial owner.

16                                              **PARTIES**

17         1.     Plaintiff NextPlay is a Nevada corporation with its principal place of business in

18   Sunrise, Florida.  NextPlay is publicly traded on the NASDAQ Stock Market under the symbol

19   "NXTP."  NextPlay is the successor entity resulting from the Monaker Transaction (defined

20   below), in which HotPlay Enterprises Limited ("HotPlay BVI") combined with Monaker Group

21   Inc. ("Monaker").  As described herein, NextPlay is a beneficial shareholder and creditor of Axion.

22         2.     Defendant Grant Kim is the Interim CEO of Axion and a member of Axion's Board

23   of Directors following the disputed April 2021 AGM.  Kim owns a residence in Whatcom County,

24   Washington and has owned that property since at least 2018.  Upon information and belief, Kim

25   is a citizen of Canada.  Kim transacts business at his Washington residence and in the United States

26   generally, including but not limited to transacting business with Bonner related to Axion from the

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1    United States.  Kim has, for example, met with Bonner about Axion business near his Washington
2    property at clubs where Kim has maintained a membership.  Upon information and belief, Kim
3    continues to conduct Axion-related business from the United States, at least from his Washington
4    residence, including but not limited to the tortious conduct alleged herein.

5         3.    Defendant Stephen Willey is an Independent Director of Axion's Board of
6    Directors, and a U.S. citizen domiciled in King County, Washington, who operates various
7    business interests in the United States.  Willey owns his residence in King County, Washington.
8    Willey transacts business at his Washington residence and in the United States generally, including
9    transacting business with Bonner related to Axion.  Upon information and belief, Willey continues
10   to conduct Axion-related business from the United States from at least his Washington residence,
11   including but not limited to the tortious conduct alleged herein.

12        4.    Defendant Yasuyo Yamazaki is the Executive Chairman/President of Axion and,
13   following the disputed April 2021 AGM at issue in this action, a member of Axion's Board of
14   Directors.  Upon information and belief, Yamazaki is a Japanese citizen domiciled in Japan.  Upon
15   information and belief, Yamazaki transacts Axion-related business in the United States, including
16   but not limited to communicating and conspiring about the tortious conduct alleged herein via e-
17   mail, telephone, videoconference, and regular mail with at least Defendants Willey and Kim when
18   they are present in Washington.  Following the disputed April 2021 AGM at issue in this action,
19   Yamazaki exchanged certain debts into equity of Axion.

20        5.    Defendant Yuki Hirakawa is a businessman who resides in Singapore and is a
21   shareholder of Axion.  Upon information and belief, Hirakawa is a citizen of Japan and transacts
22   Axion-related business in the United States, including but not limited to communicating and
23   conspiring about the tortious conduct alleged herein via e-mail, telephone, videoconference, and
24   regular mail with at least Defendants Willey and Kim when they are present in Washington.

25        6.    Defendant Axion is an investment issuer incorporated in British Columbia, Canada
26   with its principal place of business in Vancouver, British Columbia.  Axion has traded on the

3

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

Toronto Stock Exchange under the symbol "AXV" and over the counter ("OTC") on the OTCQX Best Market, a public market in the United States, under the symbol "AXNVF." After the disputed April 2021 AGM discussed herein, the Axion Board of Directors consisted of Robert Adams, Kunio Hamada, Grant Kim, Mana Prapakamol, Stephen Willey, and Yasuyo Yamazaki. Robert Adams subsequently has resigned from the Axion board.

### PERSONAL JURISDICTION

7.      This Court has personal jurisdiction over Defendants under the Washington long-arm statute, as Defendants transact business in Washington and their tortious activity occurred in whole or in part in Washington. *See* RCW § 4.28.185(a)–(b).

8.      This Court also has general jurisdiction over Defendants Willey and Kim, as property owners in the State of Washington. *See* RCW § 4.28.185(c).

9.      This Court may exercise specific personal jurisdiction over Defendants Yamazaki and Hirakawa due to their direction of the conspiracy as alleged herein in connection with the various frauds at the 2021 AGM, including with respect to the Uniq Pledge Agreement (discussed below).

10.     Additionally, this Court has specific jurisdiction over Defendant Axion because, among other reasons, Axion has purposefully and intentionally solicited investments from the United States by Kim, among others, marketing AXV shares to and taking monies from U.S. investors while physically in the United States, and by Axion making its shares available OTC on the OTCQX Best Market. By seeking investment from the United States market, Axion avails itself of the laws of the United States and/or directs its business activities to the United States. In addition, upon information and belief, Axion has incurred irrevocable liability to deliver securities in the United States and/or to transfer title of such securities in the United States based on, at least, the OTC transactions.

11.     This Court's exercise of long-arm jurisdiction over each and every Defendant comports with the due process clause of the United States Constitution.

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

12.     This Court alternatively has personal jurisdiction over Axion under Federal Rule of Civil Procedure 4(k)(2) because, among other reasons, Axion is not subject to jurisdiction in any state's court of general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

## SUBJECT-MATTER JURISDICTION

13.     Subject-matter jurisdiction is proper as to all claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and complete diversity exists, as no Plaintiff is from the same state as any Defendant.  Plaintiff is a citizen of or located in Florida and/or Nevada, while Defendants are citizens of or domiciled in British Columbia, Washington State, Japan, and/or Singapore.

14.     Additionally, this Court has federal-question jurisdiction over NextPlay's declaratory judgment claim pursuant to 28 U.S.C. § 1331, as Plaintiff's claim arises under the Copyright Act, 17 U.S.C. §§ 101 et seq.  17 U.S.C. § 1338(a).

15.     This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

## VENUE

16.     Venue is proper in this Court because Defendant Willey resides in or may be found in King County, Washington.  28 U.S.C. § 1391(b)(3); *see also* 28 U.S.C. § 1400(a).

## FACTUAL ALLEGATIONS

### *The HotPlay Technology*

17.     Beginning in or around 2014, Bonner, Red Anchor, and certain Red Anchor Affiliates[2] invented, authored, and coded an innovative computing platform called HotNow.

18.     HotNow soft-launched in Thailand in 2017 and was made available for download from any jurisdiction, including the United States, through Google Play and the Apple App Store.

---

[2]  As used herein, "Red Anchor Affiliates" refers to shareholders of Red Anchor, including Nithinan Boonyawattanapisut and Michael Bonner, and entities controlled directly or indirectly by shareholders of Red Anchor, including Cern One, HotNow Co., HotPlay BVI, and HotPlay Thailand.

5

COMPLAINT - Case No. 2:21-cv-1480

19.     HotNow revolutionized the lifestyle retail space by integrating a gamified token ecosystem, using a form of cryptocurrency called HOT Tokens.

20.     Presently, HotNow has over 700,000 downloads and counting.

21.     The present-day HotNow mobile application, under constant development at great expense, allows users to play various types of mobile video games to earn HOT Tokens that may be used to purchase deals and promotions online or at local retailers.

22.     In or around 2018, Bonner, Red Anchor, and certain Red Anchor Affiliates invented HotPlay, an IGA solution that builds upon the gamification created by HotNow.

23.     The HotPlay IGA allows advertisers to deliver in-game special privileges and digital coupons to their target audiences in any geography, including the United States.

24.     Specifically, the HotPlay IGA allows merchants to insert coupons either into the mobile applications (i.e., HotNow) or into video games.  These special privileges and digital coupons drive online traffic to offline (physical) stores through redemption codes, as depicted below:

COMPLAINT - Case No. 2:21-cv-1480

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15





16    25.    At the same time, the HotPlay IGA creates an additional revenue stream for game

17  developers without compromising the integrity of their games.

###### *Red Anchor, the Red Anchor Affiliates & the HotPlay Technology*

19    26.    Bonner and his affiliates primarily solicited investments for the HotPlay

20  Technology through Red Anchor, a British Virgin Islands Corporation and incubator controlled

21  by Bonner and his spouse, Nithinan Boonyawattanapisut ("Jess").

22    27.    Red Anchor primarily employs computer programmers.

23    28.    Between them, Bonner and Jess directly or indirectly hold a majority of the shares

24  in Red Anchor.

25    29.    Red Anchor is the parent corporation of HotNow (Thailand) Co. Ltd. ("HotNow

26  Co."), a corporation organized under the laws of the Kingdom of Thailand.  Together, Red Anchor

Morgan, Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

and Jess control a supermajority of the shares in HotNow Co.

30.     Jess was the CEO of HotNow Co. until January 2021.

31.     In or around March 2020, Red Anchor and certain investors[3] created a joint venture to continue developing and commercializing the HotPlay Technology called HotPlay Enterprises Limited, a registered British Virgin Islands company ("HotPlay BVI").

32.     Until the Monaker Transaction (defined below), HotPlay BVI was the parent of HotPlay Thailand Co. Limited ("HotPlay Thailand").

33.     Through the Monaker Transaction, HotPlay BVI has combined with Monaker to become Plaintiff NextPlay.  Accordingly, NextPlay presently controls HotPlay Thailand.

34.     In addition, and relevant to this action, Uniq Ventures Limited ("Uniq") is a Belize corporation created to hold a beneficial interest in Axion for Bonner's daughter, and controlled by her mother, Kiyomi Sato.

35.     Defendant Kim was a board member of Uniq until August 2020, when Uniq's sole member, Sato, removed Kim from the board.

36.     Uniq removed Kim by a resolution titled "Memorandum in Writing Signed by the Sole Member of the Company Pursuant to the Company's Articles of Association."  A true and correct copy of the resolution is attached as Exhibit 1.

37.     Kim was provided notice of his removal as a director of Uniq contemporaneously with the resolution.

38.     Following Kim's removal, non-party Michael John Fawdry was appointed the sole director of Uniq.

39.     Bonner, Red Anchor, and certain Red Anchor Affiliates have invested more than $16 million in the development of the HotPlay Technology.

---

[3] HotPlay BVI was a joint venture between Red Anchor and investors T&B Media Global (Thailand) Company Limited, Tree Roots Entertainment Group Co., Ltd., and Dees Supreme Company Limited, such that Red Anchor owned 50% of HotPlay BVI.  HotPlay BVI owned 90% of the voting and 95% of the economic and liquidation rights associated with HotPlay Thailand.

COMPLAINT - Case No. 2:21-cv-1480

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

40.     On October 10, 2018, Red Anchor filed a provisional patent application with the U.S. Patent and Trademark Office on behalf of inventors Bonner and non-party Mark Vange related to the HotPlay Technology, titled "Methods and Apparatus for in-Game Advertising."

41.     NextPlay has obtained a copyright registration in the HotPlay IGA from the United States Copyright Office.  A true and correct copy of the certificate of registration issued by the U.S. Copyright Office in favor of NextPlay for the HotPlay IGA is attached as Exhibit 2.

### *Defendant Axion Ventures Inc.*

42.     Defendant Axion is an investment issuer focused primarily on online video gaming and other information technology sectors.

43.     Axion was incorporated on June 21, 2011 under the name Capstream Ventures Inc. ("Capstream") and renamed Axion Ventures Inc. in or around May 2016.

44.     Bonner served as the CEO of Axion from May 26, 2016 through July 14, 2020 and was an elected member of Axion's Board of Directors from May 11, 2016 through April 15, 2021.

45.     Axion is a holding company, and the entities it controls in China and Thailand make video games and video game art and animation.  Axion has few, if any, actual employees.

46.     Axion has never coded a game-publishing or advertising platform.

47.     Most of the employees of the entities Axion controls in China and Thailand are artists, animators, or support personnel, with relatively few computer programmers, all of whom are game developers rather than platform developers.

48.     As a result, these Axion-controlled entities primarily integrate art and animations with off-the-shelf, third-party middleware "game engines" such as Unity Engine and Epic Games' Unreal engine in order to complete their video games.

### *Axion Invests in Red Anchor*

49.     In or around October 16, 2016, Axion (then Capstream) entered into an investment agreement with Red Anchor (the "Red Anchor Investment") through which Axion acquired a small minority interest in Red Anchor, today representing approximately 10% of its outstanding equity,

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1    in exchange for $1.5 million.

2        50.    The Red Anchor Investment closed on or around April 6, 2017.

3        51.    After the Red Anchor Investment by Axion, there have been multiple financing

4    rounds, which have diluted Axion's ownership in Red Anchor to approximately 10.27% as of the

5    date of this Complaint.

6        52.    While complementary, Red Anchor, HotNow Co., HotPlay BVI, and Axion are

7    separate and distinct corporate entities with largely different skill sets.  Red Anchor, HotNow Co.

8    and HotPlay BVI are coding-centric and focus on platform and application developments, while

9    Axion focuses strictly on video game development, which largely involves art and animation.

10       53.    Axion entered and closed the Red Anchor Investment with the full knowledge that

11   Red Anchor owned the HotPlay Technology at that time, i.e., HotNow and the associated IGA

12   technology now called HotPlay.

13            *Axion Sought and Obtained Investment from Bonner, Red Anchor,*

14                   *and the Red Anchor Affiliates*

15       54.    In addition to third-party investment, between March 2018 and June 2020, Bonner,

16   Red Anchor, and certain Red Anchor Affiliates underwrote investment in Axion, including but not

17   limited to directly providing low- or no-interest loans to Axion.

18       55.    The resulting debt owed by Axion—approximately $9.1 million as of August

19   2020—is referred to herein as the "Red Anchor Loans."

20       56.    The Red Anchor Loans include at least ten separate instruments, including loan

21   agreements, promissory notes, and an unsecured convertible debenture, executed by Axion

22   between March 2, 2018 and June 29, 2020 with Bonner, Red Anchor, and certain Red Anchor

23   Affiliates.

24       57.    Each of the ten instruments currently is and has been in default by Axion and is

25   subject to litigation currently pending elsewhere.  NextPlay is not by this action seeking to enforce

26   the Red Anchor Loans.

COMPLAINT - Case No. 2:21-cv-1480

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

58.     Despite the Red Anchor Loans, Axion required an additional cash infusion.  Yet, Axion's debt-to-income ratio made it difficult, if not impossible, to generate additional equity investment.

59.     During this same period, Defendant Kim began investing in a game company called Drummond Ventures Corp. ("Drummond"), for which Kim also served as a director.   Kim represented that Drummond had been formed to acquire an ancient grains company.

60.     That representation was false.  Drummond was formed to compete with Axion.

61.     Bonner learned of Kim's involvement with Drummond in late 2019, and thereafter learned that Kim had been soliciting Axion's then–General Counsel, Craig Rollins, to work for Drummond.  Bonner at that time demanded Kim's resignation from Axion's board.

62.     Kim did not resign from the Axion board.

63.     Rollins ultimately became CEO of Drummond.

64.     Investors whom Bonner had been soliciting for investment in Axion ultimately, at Kim's insistence chose instead to invest in Drummond.

65.     By mid-2020, Axion effectively was insolvent.

66.     Around that time, Axion's Chief Financial Officer, Peemtat Utsahajit, as well as Defendant Kim were asking Bonner and his family and affiliates repeatedly for further loans.  Kim, for instance, asked Bonner for additional financing for Axion while he and Bonner were visiting investors in San Francisco and staying in the same rental in Silicon Valley.

67.     In part to help alleviate Axion's debt-to-equity ratio, Bonner agreed to invest cash into Axion by converting the Red Anchor Loans into equity—the economic equivalent of an investor purchasing equity and the company using the proceeds to retire existing debt.

68.     Bonner made a proposal to convert the Red Anchor Loans into equity as early as April 2020, and on July 8, 2020, he formally requested, through a letter from counsel, that the Axion Board of Directors convert the Red Anchor Loans into common shares at market rates.

69.     At the time, the number of issued and outstanding Axion shares with voting rights

COMPLAINT - Case No. 2:21-cv-1480

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

totaled between 212 million and 218.9 million, of which Bonner and the Red Anchor Affiliates together controlled approximately 72 million (33%–34% of the total outstanding equity in Axion).

70.     At an assumed market rate of $0.14 per share, converting $9.1 million of Red Anchor Loans into equity would have represented issuance of approximately 65 million new Axion shares (roughly 23%).  At an assumed rate of $0.17 per share, converting the Red Anchor Loans into equity would have represented issuance of approximately 53 million new Axion shares (roughly 20%).  In either case (or even at much higher share prices), converting the Red Anchor Loans into equity would have had the effect of the Red Anchor Affiliates controlling more than 50% of the total issued and outstanding voting shares of Axion.

71.     Certain Red Anchor Affiliates also offered to invest cash in conjunction with conversion of the Red Anchor loans into AXV equity, which cash likely would have allowed the KPMG audit to proceed and the Cease Trade Order to be lifted, but the Director Defendants rejected that offer.

72.     The Director Defendants refused to convert the Red Anchor Loans into equity of Axion at the market rates proposed by Bonner, or to propose any alternative market rate.

73.     Subsequent to the events alleged in this action, the Director Defendants authorized conversion of debts held by Defendant Yamazaki into Axion shares, at rates favorable to Yamazaki, in addition to issuing 40 million more shares to Yamazaki beyond those resulting from conversion of debt with an indication that Axion plans to issue another 40 million shares to Yamazaki, exclusively.

### The Monaker Transaction and Creation of NextPlay

74.     Simultaneously with the foregoing discussions about converting the Red Anchor Loans into Axion equity, Bonner also explored reinvigorating Axion by selling the debt and Axion equity interests held by the Bonner Entities to a publicly traded third party.

75.     Bonner was open with the Axion board about his desire to explore combining Axion with a NASDAQ-traded company.

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

76.   Monaker, a U.S. company traded on NASDAQ, expressed interest in a transaction related to the Axion interests held by Bonner and the Red Anchor Affiliates.

77.   Ultimately, on July 23, 2020, Monaker filed a Form 8-K with the Securities and Exchange Commission ("SEC") disclosing that it had entered into a material definitive agreement with HotPlay BVI, the controlling shareholder in HotPlay Thailand, and with certain stockholders of HotPlay Thailand (the "HotPlay Exchange Agreement"), as well as a Share Exchange Agreement (the "Axion Exchange Agreement") with certain shareholders and debtholders of Axion, including Uniq and other Red Anchor Affiliates.  The HotPlay Exchange Agreement and Axion Exchange Agreements collectively are referred to as the "Exchange Agreements."  The Exchange Agreements consummated the "Monaker Transaction" as used herein.

78.   Through the Monaker Transaction, Monaker also acquired the Red Anchor Loans in exchange for Monaker shares.

79.   Monaker updated its Form 8-K with the SEC on October 29, 2020, November 18, 2020, January 11, 2021, and February 22, 2021 to reflect amendments to the Exchange Agreements in the periods preceding each disclosure.

80.   The Monaker Transaction closed on or around June 30, 2021 (the "Closing").

81.   On July 7, 2021, Monaker issued a press release titled "Monaker Group Announces Closing of HotPlay Acquisition with NASDAQ Approval for NextPlay Technologies Listing."

82.   In connection with the Closing, Monaker acquired 100% of the outstanding capital shares of HotPlay BVI.  The resulting entity was renamed NextPlay.

83.   As a result of the Monaker Transaction, NextPlay currently holds approximately 72 million shares in Axion, or about 34% of the votable shares issued and outstanding at the time of the AGM.

***Director Defendants Conspire to Fraudulently Manipulate Axion's 2021 AGM***

84.   Defendant Hirakawa historically had partnered with Bonner and Jess on various investments and had been invited by Bonner to participate in the Monaker Transaction, including

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1   an offer by Bonner to exchange Hirakawa's various investments.

2        85.    Hirakawa declined all offers to participate in the Monaker Transaction, and as the

3   2021 AGM approached, Hirakawa became hostile toward Bonner and his affiliates.

4        86.    On March 22, 2021, Axion circulated its Notice of Annual General and Special

5   Meeting of Shareholders to be Held on April 15, 2021 ("Notice") and Information Circular.

6        87.    Defendant Kim signed the Notice on behalf of Axion as the Interim Chief Executive

7   Officer and Director.  Kim had no experience in video game development and had not held a job

8   in any industry since prior to 2003.  Axion's board never reviewed Kim's resume before appointing

9   him CEO.  Upon information and belief, Kim did not have a resume at the time, and any such

10  resume would have indicated that Kim had not been employed for at least fifteen years and had

11  never worked in a relevant industry.

12       88.    Kim misrepresented publicly that he had graduated from the Wharton School at the

13  University of Pennsylvania.

14       89.    Kim in fact never graduated from Wharton, though he may have attended briefly.

15       90.    According to the Information Circular, Axion management proposed to nominate

16  to the Axion Board of Directors at the 2021 AGM Robert Adams, Kunio Hamada, Grant Kim,

17  Mana Prapakamol, Stephen Willey, and Yasuyo Yamazaki (the "Management Slate").

18       91.    According to the Information Circular, heading into the AGM, Uniq held

19  23,585,984 non-escrow shares or approximately 10.92% of the votable shares.

20       92.    Importantly, in the Notice, Axion falsely represented that to the best of its

21  knowledge, Kim was the sole director of Uniq.  Again, Kim himself signed the false Notice.

22       93.    Axion had no reasonable basis for representing that Kim was the sole director of

23  Uniq, as Kim had been replaced the year prior.

24       94.    Axion's representation that Kim was the sole director of Uniq was knowingly false

25  at the time it was made.

26       95.    Axion's representation that Kim was the sole director of Uniq—made at the behest

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

of and in coordination with the Director Defendants—was made with the intent to fraudulently influence the 2021 AGM by creating the appearance that the Management Slate controlled shares representing an additional 11% of the vote, and simultaneously that the same 11% were not controlled by parties supportive of Bonner.  The Director Defendants thus falsely communicated to shareholders a projected 22% swing in favor of the Management Slate prior to any proxy being solicited.

96.    According to the Information Circular, any registered shareholder unable to attend the AGM in person was to vote by proxy at least forty-eight hours (excluding Saturdays, Sundays and holidays recognized in Bangkok) before 10:00 Vancouver time on April 15, 2021.

97.    On March 31, 2021 certain Red Anchor Affiliates who were shareholders of Axion circulated a Concerned Shareholders' Proxy Circular ("Concerned Shareholders' Circular"), supporting a different slate of candidates including Bonner; William Kerby (CEO of Monaker); Mark Vange (CEO of HotPlay Thailand); Chris Higson, an accounting professional and professor; Ellison C. Morgan; and Thepparith Senamngern (collectively, the "Monaker Slate").  Defendants knew at the time—and it was explained in the Concerned Shareholders' Circular—that Monaker (now NextPlay) was the holder of the beneficial interest in the Axion shares issued to certain Red Anchor Affiliates who prepared the Concerned Shareholders' Circular.

98.    The Director Defendants were aware that the Monaker Slate included directors and other representatives of Monaker (now NextPlay), and that any benefit obtained or realized by the Monaker Slate at the 2021 AGM would inure to the benefit of NextPlay.

### *The Director Defendants and Hirakawa Forge the Pledge Agreement*

99.    On April 9, 2021, Uniq—through a proxy by its sole director, Fawdry—cast its votes at the 2021 AGM in favor of the Monaker Slate, consistent with the interests of the shares' beneficial interest holder, NextPlay.  A true and correct copy of the proxy cast by Fawdry on behalf of Uniq is attached hereto as Exhibit 3.

100.    Subsequent to the final vote, Defendant Yamazaki, who chaired the April AGM,

15

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

allowed Uniq's votes to be overridden and reversed by a belated and subsequently produced proxy, cast after the deadline set by the board for receiving proxies, that under applicable procedures should not have been counted.

101.   Yamazaki's inexplicable decision resulted in Uniq's approximately 12%, which had been cast for the Monaker Slate, to become votes against the Monaker Slate, a net difference of around 23%.

102.   Axion has subsequently claimed to have given Hirakawa the proxy on the basis of a document called a Pledge and Irrevocable Proxy Security Agreement ("Pledge Agreement") on behalf of Uniq and in favor of Hirakawa.

103.   The Pledge Agreement purports to be dated September 12, 2018, executed in ink by Defendant Kim in favor of Hirakawa.  A copy of the purported Pledge Agreement is attached hereto as Exhibit 4.

104.   However, at the time of its supposed execution, Kim was not even physically present in Asia, where the purported Pledge Agreement was executed in ink, and he had not yet even met Hirakawa.

105.   Kim has falsely claimed that Bonner gave Hirakawa the Pledge Agreement.

106.   Bonner never gave Hirakawa a pledge agreement to any shares of Axion.

107.   Kim and Hirakawa have not produced any evidence that the pledge was discussed or that any draft of the Pledge Agreement existed prior to 2021.

108.   Sato, the sole member of Uniq (for which the beneficiary is her daughter with Bonner) never authorized a Pledge Agreement and never had any knowledge of a Pledge Agreement.

109.   Neither Sato nor Uniq ever met or had any dealings with Hirakawa.

110.   The Pledge Agreement misspells the name of Sato.

111.   Hirakawa has not invested in or lent money to either Sato or Uniq.

112.   In reality, no such Pledge Agreement existed in 2018 and no contemporaneous

16

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1   mention of such Pledge Agreement exists anywhere.

2   113.   Rather, the Pledge Agreement is a forgery created by Defendant Kim in

3   coordination with the other Director Defendants and Hirakawa—and signed by Kim and Hirakawa

4   and endorsed by Yamazaki and Axion's board—for the purpose of justifying or explaining their

5   manipulation of the Axion AGM for their own benefit.

6   114.   Even if the Pledge Agreement had been a legitimate document executed for security

7   purposes in 2018—which it was not—by its own terms the Pledge Agreement does not grant

8   authority to Hirakawa to cast votes in contravention of Sato's wishes or to override the legitimate

9   votes that she approved to be cast by Fawdry at the 2021 Axion AGM.

10   115.   By unlawfully reversing the Uniq vote originally cast in favor of the Monaker Slate

11   and belatedly replacing it with Hirakawa's invalid vote on the basis of the proxy in favor of the

12   Management Slate (ostensibly based on the fraudulent Pledge Agreement), Yamazaki and the other

13   Director Defendants acted in their own self-interest.

14   116.   Given this significant voting irregularity, Axion was repeatedly asked for proof of

15   how votes were cast at the AGM yet has refused to produce such records.  The information about

16   how votes were cast is (or should be) readily available, but Axion has not produced it.

17   117.   At the time of the AGM, Uniq's 23.5 million shares represented the largest

18   concentration of shares held by any single beneficial shareholder other than the Red Anchor Entity

19   controlled by Bonner's wife, Jess.

20   118.   On April 15, 2021, Axion issued a press release announcing that the Management

21   Slate had been elected to Axion's board.  This information was transmitted to U.S. investors as

22   well.

23   ## <u>COUNT I</u>

24   ### Conspiracy To Commit Fraud

25   119.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

26   through 118 as if fully set forth herein.

17

Morgan, Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

120.     The Director Defendants had an unlawful agreement with each other and with Hirakawa to manipulate and unlawfully influence the Axion 2021 AGM in favor of their preferred candidates for their own personal gain.

121.     In furtherance of their agreement, the Director Defendants and Hirakawa forged a Pledge Agreement, purporting to give Hirakawa control over Uniq's shares in Axion.

122.     In furtherance of their agreement, the Director Defendants submitted the Notice of the 2021 AGM falsely asserting that Kim controlled Uniq's shares in Axion, approximately 12% of votable shares, despite having knowledge that Kim previously had been removed as a Director of Uniq.

123.     In furtherance of their agreement, the Director Defendants issued a proxy to Hirakawa for Uniq's shares in Axion for the 2021 AGM without any written authorization by Uniq.

124.     In furtherance of their agreement, the votes tied to Uniq's shares voted by Fawdry were invalidated and the votes purportedly tied to Uniq's shares by Hirakawa were deemed valid.

125.     After the Monaker Transaction, Uniq held its shares for the beneficial interest of NextPlay.  NextPlay, however, was unable to gain the benefit of its beneficial interest—as voted by Fawdry—and has thus been harmed by the conspiracy alleged herein because Uniq's shares were overridden and voted pursuant to the conspiracy at the 2021 AGM.

## COUNT II

### FORGERY

126.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 125 as if fully set forth herein.

127.     The Director Defendants and their co-conspirators, including Hirakawa, created the Pledge Agreement from whole cloth as a forgery.

128.     The Director Defendants and their co-conspirators, including Hirakawa, forged the Pledge Agreement with the intent to influence the Axion 2021 AGM and deceive the global

18

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

markets that Axion's 2021 AGM was conducted fairly.

129.     NextPlay, as the beneficial interest holder in Uniq's shares, has been harmed by the fraudulent creation and recognition of the Pledge Agreement as it was unable to direct how Uniq's shares would be voted at the 2021 AGM.

## COUNT III

### BREACH OF FIDUCIARY DUTIES TO SHAREHOLDERS

130.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 129 as if fully set forth herein.

131.     The Director Defendants owe fiduciary duties to all shareholders to discharge their responsibilities as directors in good faith, with the care that an ordinary prudent person in a like position would exercise under similar circumstances, and in a manner each director reasonably believes to be in the best interests of the corporation.

132.     NextPlay holds the beneficial interest in the Axion shares issued to Uniq and entitled to vote at the AGM.

133.     The right to vote in shareholder elections and have those votes counted is among the most fundamental of shareholder rights.

134.     In furtherance of NextPlay's beneficial interest, Uniq directed its sole director, Fawdry, to cast its votes at the 2021 AGM in favor of the Monaker Slate.

135.     Fawdry in fact did cast Uniq's votes in favor of the Monaker Slate at the 2021 AGM.

136.     In lieu of counting the Uniq votes as cast, the Director Defendants acted in concert to disregard the Uniq votes and not count them in favor of the Monaker Slate.  In this way, the Director Defendants denied NextPlay its beneficial interest in the voting rights for the shares it acquired from Uniq.

137.     Compounding the disenfranchisement of NextPlay's Uniq shares, the Director Defendants acted in concert to count in place of the Uniq votes a proxy submitted by Defendant

19

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

Hirakawa for the very same shares, cast in favor of the Management Slate. The Director Defendants thus reversed and overrode NextPlay's beneficial shareholder rights on the basis of an unauthorized proxy.

138.    The Hirakawa proxy was submitted by Defendant Hirakawa after the deadline for the proxy vote to be counted.

139.    The wording of the fraudulent Pledge Agreement that the Director Defendants later claimed justified the Hirakawa proxy does not purport to authorize the holder to vote any of the Uniq shares.

140.    Any honest and competent director would not have accepted such an instrument as sufficient for the purpose of overriding Uniq's votes.

141.    Upon information and belief, the forged Pledge Agreement did not actually exist at the time of the Axion AGM.

142.    Separately, certain voters friendly to the Monaker Slate had difficulties formally casting their votes but made known to the Director Defendants before the AGM their intent to vote their shares in favor of the Monaker Slate. The Director Defendants refused to count these shareholders' formal votes, even though the Director Defendants accepted the belated Hirakawa proxy.

143.    Given that Yamazaki and the other Director Defendants acted in concert to flip the Uniq votes in which NextPlay held and holds the beneficial interest, upon information and belief he and they also flipped the votes cast or intended to be cast by other shareholders for the purpose of falsifying the results of the 2021 AGM and ensuring that their preferred Management Slate be declared to have won the election.

144.    These departures from the Director Defendants' fiduciary duties—including by failing to abide by the rules governing shareholder elections, by issuing false and misleading statements in connection with control of the Uniq shares by Defendant Kim, by rejecting votes by other shareholders attempted to be cast in favor of the Monaker Slate, by accepting the Hirakawa

20

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1  proxy after the cutoff for submitting proxies, by accepting the Hirakawa proxy (at any time) to

2  override properly cast votes absent an express authorization from Uniq in the fraudulent Pledge

3  Agreement or otherwise, by disregarding NextPlay's beneficial interest in the voting rights of its

4  shares, and by refusing to disclose the records of votes actually cast at the 2021 AGM—were

5  directed at NextPlay and interests aligned with it, distinct from harms caused to shareholders

6  generally, specifically for the purpose of elevating the Director Defendants' individual interests

7  over the shareholder rights for which NextPlay holds the beneficial interest.

### COUNT IV

#### DECLARATORY JUDGMENT AS TO COPYRIGHT OWNERSHIP

10    145.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

11  through 144 as if fully set forth herein.

12    146.    "Copyright protection subsists . . . in original works of authorship fixed in any

13  tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise

14  communicated." 17 U.S.C. § 102(a).

15    147.    A copyright confers exclusive rights to its owner, including the sole ability to

16  reproduce or distribute the copyrighted work or prepare derivative works. *See, e.g.*, 17 U.S.C. §

17  106.

18    148.    The U.S. Copyright Office has Issued a Certificate of Registration for the HotPlay

19  IGA in favor of NextPlay. *See* Ex. 1.

20    149.    Copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a).

21    150.    An employer's authorship includes works generated by employees within the scope

22  of their employment. 17 U.S.C. § 101 (defining "work made for hire"); 17 U.S.C. § 201(b).

23    151.    Computer programs such as HotNow and the HotPlay IGA may receive copyright

24  protection as "literary works" under 17 U.S.C. § 102(a)(1).

25    152.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and other legal

26  relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

153.   Axion has manufactured an actual case or controversy between Plaintiff NextPlay and Defendant Axion about who owns the copyright in the HotPlay Technology, specifically the HotPlay IGA.

154.   Axion claims a constructive trust over the HotPlay IGA and has publicly accused Bonner of stealing the HotPlay IGA from it.   Plaintiff Bonner first conceived of the HotPlay Technology and NextPlay is the successor responsible for employing the developers who wrote the source code for HotNow and the HotPlay IGA during the course of their employment.

155.   Plaintiff NextPlay, through corporate restructuring, currently owns the copyright in the HotPlay Technology, including but not limited to the HotPlay IGA, through the work-for-hire doctrine and/or a valid written assignment.

156.   NextPlay has been issued a copyright registration for the HotPlay IGA from the United States Copyright Office.

157.   Axion has no valid claim to ownership to HotNow or the HotPlay IGA, nor does Axion have a license to use or market HotNow or the HotPlay IGA.

158.   Neither Axion nor Axion employees during or within the scope of their employment authored or co-authored any component of the HotPlay Technology, including but not limited to the HotPlay IGA.

159.   At no time has Axion held exclusive rights to the HotPlay Technology, including but not limited to the HotPlay IGA.

160.   At no time has Axion held a valid license to the HotPlay Technology, including but not limited to the HotPlay IGA.

161.   At no time has Axion been assigned any rights to the HotPlay Technology, including but not limited to the HotPlay IGA.

162.   Axion employees did not write any code for the HotPlay Technology, including but not limited to the HotPlay IGA.

163.   Yet, Axion asserts a purported ownership interest in the HotPlay IGA, including

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

but not limited to during litigation in Canada and to potential investors.

164.    Upon information and belief, Defendant Axion continues to wrongly represent, without license or permission, to investors and others that it owns the copyright in the HotPlay Technology such as the HotPlay IGA.

165.    NextPlay has been harmed by Defendant Axion's knowing misrepresentations as to its ownership in the HotPlay Technology, as Axion's misrepresentations spark doubt as to the true owner of the HotPlay Technology.

\*       \*       \*

COMPLAINT - Case No. 2:21-cv-1480

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1      WHEREFORE, Plaintiff respectfully requests judgment against Defendants and seeks

2  relief, as follows:

3      a.     That judgment be entered for Plaintiff and against Defendants on all Counts;

4      b.     That this Court recognize the conspiracy between and amongst the Director

5  Defendants and Hirakawa;

6      c.     That this Court declare that the Pledge Agreement is a forgery with no legal force

7  or effect;

8      d.     That this Court declare that the proxy issued by Axion in favor of Hirakawa for

9  Uniq's shares was invalid, with no legal force or effect;

10      e.     That Axion and the Director Defendants be compelled to provide a full accounting

11  of all votes cast and the disposition of each at the 2021 AGM;

12      f.     Equitable relief sufficient to remedy the Director Defendants' breach of their

13  fiduciary duties;

14      g.     That Defendant Yamazaki's election to the Axion Board of Directors, as well as all

15  share issuances or exchanges to any Director Defendant, be invalidated nunc pro tunc to the 2021

16  AGM;

17      h.     That this Court declare that Plaintiff NextPlay is the owner of the copyright in the

18  HotPlay IGA;

19      i.     That this Court award compensatory damages in an amount to be determined at

20  trial;

21      j.     That this Court award punitive damages in an amount to be determined at trial;

22      k.     That a jury hear Plaintiff's claims; and

23      l.     That this Court award Plaintiff its fees and costs and such other and further relief

24  as deemed just and proper.

25                 [signature on following page]

26

MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304
+1.650.843.4000

1      Dated: November 1, 2021             Respectfully submitted,

2

                                s/ Marina C. Gruber

3                                 **MORGAN, LEWIS & BOCKIUS LLP**

4                                 Marina C. Gruber, WSBA #53873

5                                 1400 Page Mill Road
                                Palo Alto, CA  94304

6                                 (T):     650.843.4000
                                (F):     650.843.4001

7                                 marina.gruber@morganlewis.com

8                                 Jason R. Scherr*
                                Clara Kollm*

9                                 1111 Pennsylvania Avenue, NW
                                Washington, DC  20004

10                               (T):     202.373.6000

11                               (F):     202.739.6001
                              jr.scherr@morganlewis.com

12                               clara.kollm@morganlewis.com

13                               *pro hac vice application forthcoming

14                               *Counsel for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - Case No. 2:21-cv-1480